## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **REHAN CHAUDHRI**<br>324 Croton Lake Road<br>Bedford Corners, NY 10549<br><br>*Plaintiff*<br><br>v.<br><br>**GORDON INVESTMENTS LIMITED**<br>31, Evvipidou Street<br>NBA SEA PARK 1st Floor, Office 102<br>3031 Limassol Cyprus<br><br>*and*<br><br>**GIUSEPPE DESSI**<br>40 New Bond Street, 4th floor<br>London, W1S 2RX<br><br>*and*<br><br>**HAMID ANSARI**<br>5809 Golden Leaf Court<br>Plano, Texas 75093-0000<br><br>*Defendants* | CIVIL ACTION NO. |

### CIVIL ACTION COMPLAINT

**AND NOW** Comes Plaintiff, Rehan Chaudhri ("Mr. Chaudhri" or "Plaintiff") by and through his undersigned counsel, Bochetto & Lentz, P.C. ("B&L") and avers as follows in support of his Complaint against Defendants, Gordon Investments Limited ("GIL"), Giuseppe Dessi ("Mr. Dessi"), and Hamid Ansari ("Mr. Ansari") (collectively "Defendants"):

### I.  SUMMARY

1. This is a fraudulent inducement and breach of contract action to recover capital as well as principal and interest on a loan made to Defendants, Gordon Investments Limited

("GIL"), Giuseppe Dessi ("Mr. Dessi"), and Hamid Ansari ("Mr. Ansari") (collectively "Defendants").

2. Defendants fraudulently induced Plaintiff Rehan Chaudhri ("Mr. Chaudhri" or "Plaintiff") to pay Two Hundred Thousand Dollars ($200,000.00) for options in an entity they controlled, Prodea Systems, Inc., reconstituted as Nashville S.a.r.l. in Luxembourg ("Prodea-Nashville") (the "Options"), and then to advance a Two Million Dollar ($2,000,000.00) short-term loan by falsely representing that they would promptly repay Mr. Chaudhri's Two Million, plus an additional Five Hundred Thousand Dollars, for a total of Two Million and Five Hundred Thousand Dollars ($2,500,000.00) within two months (the "Loan").

3. However, when Plaintiff sought the promised Options and repayment of the Loan, Defendants either avoided ignored Plaintiff's communications and have refused to provide him with the Options he was promised or to make any payments on the Loan.

4. Despite Plaintiff's best efforts to obtain repayment of the Loan, the entire balance of Two Million and Five Hundred Thousand Dollars ($2,500,000.00) remains outstanding, for more than one year.

5. Plaintiff seeks to recover the capital he was fraudulently induced to provide the Defendants in exchange for options in Prodea-Nashville, the entire balance of the Loan plus interest, as well as punitive damages and attorneys' fees arising from Defendants' knowingly false and fraudulent promises, as well as Defendants' continued fraudulent promises, which lulled Plaintiff into inaction.

## II. PARTIES

6. Plaintiff, Mr. Chaudhri is an adult individual residing at 324 Croton Lake Road, Bedford Corners, NY 10549.

7.     Defendant, GIL is a limited company with a registered business address at 31, Evvipidou Street, NBA SEA PARK 1st Floor, Office 102, 3031 Limassol Cyprus.

8.     Defendant, Giuseppe Dessi ("Mr. Dessi") is an adult individual who may be served at his company, Method Investment and Advisory Group ("Method"), 40 New Bond Street, London W1S 2RX.

9.     Defendant, Hamid Ansari ("Mr. Ansari") is an adult individual residing at 5809 Golden Leaf Court, Plano, Texas 75093.

10.    GIL is a holding company of Method which is headquartered in the United Kingdom, registered with the Financial Conduct Authority ("FCA") No. 4316130, and owned and operated by Defendant Mr. Dessi.

11.    At all times material hereto, Defendants regularly travelled to New York City and conducted regular business dealings in the United States, and have assets in the United States.

12.    Defendants also own significant stakes in Prodea-Nashville, a company initially based in Dallas, Texas, which has been reconfigured as Nashville S.a.R.L. in Luxembourg.

13.    Further, upon information and belief, through GIL and/or any of GIL's subsidiaries, including but not limited to Method, Defendants do business with the United States, accept investments from United States citizens, and invest in assets, equities, and other financial products that are traded in the United States.

14.    Further, as set forth more fully below, Defendants targeted Plaintiff in New York and defrauded Plaintiff who is a resident of the New York.

### III.    JURISDICTION AND VENUE

15.    This Court jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 exclusive of interest and costs and is between a citizen of the State of New York and citizens or subjects of a foreign states. Moreover, Defendants agreed that any

3

dispute over this loan would be resolved under New York law and Defendants purposefully availed themselves to be sued under New York law by targeting a resident of New York.

16. Venue is proper in the Southern District of New York pursuant to 28 U.S.C § 1391 because Defendants agreed that any disputes "shall be construed and enforced under the laws of the State of New York" and a substantial part of the events giving rise to Plaintiff's claims occurred in this district. (*See* Ex. B, Ex. C as identified below).

### IV. FACTS COMMON TO ALL COUNTS

17. Prior to the events in question, Plaintiff had a longstanding business relationship with Mr. Ansari and Mr. Dessi and participated in business ventures with them.

18. Mr. Ansari stated that he sold his previous company for $1.2 billion in 2001 and had over $300 million of capital in his family office in Dallas. Mr. Dessi stated that he had over $30 million of his personal capital in GIL. Based on these claims and the parties' prior dealings, Plaintiff understood Mr. Ansari and Mr. Dessi to be wealthy, well capitalized, and trustworthy.

19. Between July of 2018 and January of 2019, Defendants Mr. Dessi and Mr. Ansari coerced Plaintiff into providing them with substantial capital for their investments, first in the form of options in Prodea-Nashville, and later in the form of a loan.

20. Mr. Ansari also stated that he would make Mr. Chaudhri a 50% partner in his subsequent business ventures.

21. However, Defendants have failed to deliver on their promises or repay any portion of the loan they received from Plaintiff.

#### Options in Prodea-Nashville

22. In or about July of 2018, Mr. Ansari offered Plaintiff options in Prodea-Nashville, an entity owned and controlled by him and his wife, Anousheh Ansari ("Mrs. Ansari").

4

23. Mr. Ansari represented to the Plaintiff that he needed capital for Prodea-Nashville, and in exchange for Two Hundred Thousand Dollars ($200,000.00) ("Option Capital"), he would get shares at a valuation "substantially lower" than Intel's, Mubadala's, and other large institutions' most recent investment—which valued the company at approximately One Billion Dollars ($1,000,000,000.00) (collectively the "Option Terms").

24. Plaintiff understood that the Option Terms would enable him to purchase Prodea-Nashville shares at a significantly discounted valuation.

25. Plaintiff understood that Mr. Ansari's wife, who was the acting CEO of Prodea-Nashville at the time, was in agreement and consented to the Option Terms.

26. Mr. Ansari sought that Plaintiff tender the Option Capital and promised to provide documents evidencing the Option Terms shortly.

27. However, after Plaintiff invested the Option Capital, he neither received the promised options documents, nor a return of Option Capital.

28. Thereafter, Mrs. Ansari resigned as CEO, to become CEO of XPRIZE Foundation ("XPRIZE"), an Ansari affiliated prominent non-profit organization, and Mr. Ansari became the CEO of Prodea-Nashville.

29. Plaintiff repeatedly reminded Mr. Ansari about the Option Capital and sought that he uphold the above Option Terms.

30. However, despite being the CEO of Prodea-Nashville, Mr. Ansari ignored Plaintiff's pleas.

31. To date Plaintiff has neither received the return of his Two Hundred Thousand Dollar ($200,000.00) investment, nor the promised Option Terms.

**Loan to Mr. Dessi**

32. In or about December of 2018 / January of 2019, Defendant Mr. Dessi and Mr. Ansari approached Plaintiff and told him that they were seeking to buy out a debt claim owned by Fortress Investment Group ("Fortress") against Prodea-Nashville to become Prodea-Nashville's controlling shareholder.

33. Mr. Dessi represented that he did not have enough liquidity to proceed with the opportunity.

34. Mr. Ansari represented that he could not provide immediate liquidity to Mr. Dessi due to possible complications in his relationships with Intel, Mubadala and other institutional investors, as well as his participation in the negotiations with Fortress, which held claim to the Prodea-Nashville patents. He however stated that he would fully guarantee Mr. Dessi's loan with all his family's personal assets for a prompt repayment within four to six weeks.

35. Mr. Dessi and Mr. Ansari assured the Plaintiff that within a maximum of six weeks he would have access to over thirty million dollars in assets so that Plaintiff could be repaid the $2 million dollars plus a $500,000 premium for advancing this short-term loan.

36. Plaintiff reasonably relied on this promise and he understood from Mr. Dessi that Mr. Dessi did in fact have in excess of forty million dollars in assets, but lacked short term liquidity over a few-week period.

37. To fund the opportunity, Mr. Dessi sought to borrow Two Million Dollars ($2,000,000.00) (the "Principal") from the Plaintiff.

38. Mr. Dessi promised to repay Plaintiff the Principal plus Five Hundred Thousand Dollars ($500,000.00) (the "Interest") within six (6) weeks (the "Term") (hereinafter, the Principal, Interest, and Term together are collectively referred to as the "Loan").

39. Plaintiff and Mr. Dessi verbally agreed to the above referenced Loan terms.

40. As security for the Loan, Mr. Dessi offered to have his company Method guarantee the Principal and represented that GIL is the holding company for Method as well as Mr. Dessi's other personal assets and drafted a document confirming that GIL would guarantee the Principal. (*See* GIL Guarantee attached hereto as **Exhibit "A"**).

41. As additional security for the Loan, Mr. Dessi offered a personal guarantee on the Interest. (*See* Mr. Dessi Personal Guarantee attached hereto as **Exhibit "B"**).

42. Mr. Ansari, who stood to benefit from Mr. Dessi obtaining control of Prodea-Nashville, was aware and orchestrated the verbal Loan agreement, and as further assurance to Plaintiff offered to back the full amount of the Loan as well as acting as a "back-stop" and to guarantee Mr. Dessi's guarantee for the $500,000 Interest payment. (*See* Mr. Ansari Guarantee attached hereto as **Exhibit "C"**). (Exhibits A, B, and C are hereinafter collectively referred to as the "Guarantees").

43. Mr. Dessi stated that the monies were required urgently to pay Fortress and that the documentation of the agreement, including the written contract and a Letter of Credit ("LOC") from an established bank would be provided shortly after the monies were wired. (*See* a true and correct copy of the relevant portion of Mr. Dessi and Mr. Chaudhri's WhatsApp communications attached hereto as **Exhibit "D"**; *See also* a true and correct copy of the relevant portion of Mr. Dessi, Mr. Ansari, and Mr. Chaudhri's WhatsApp group chat communications attached hereto as **Exhibit "E"**).

44. Thereafter, between January and February of 2019, in reliance on the promised terms of the Loan as well as the Guarantees made by the Defendants, Plaintiff wired funds to the Defendants and/or their assignees—as directed by the Defendants. (*See* Ex. D, Ex. E).

45. Further, in reliance on Defendants' promise to repay the loan within six (6) weeks, Plaintiff made arrangements to invest the Principal and Interest from the Loan into another venture.

46. However, Mr. Dessi failed to provide any of the aforementioned documents despite repeated requests for such.

47. Further, Defendants failed to repay the short-term Loan in accordance with the agreed upon Term.

48. Because they were long-time acquaintances, between April and December of 2019, Plaintiff informally asked the Mr. Dessi and Mr. Ansari about repayment of the Loan. (*See* Ex. E).

49. Defendants repeatedly promised to repay the Loan, but made no effort or payments towards the Principal or Interest of the Loan, and instead, used Plaintiff's money to their benefit and to Plaintiff's detriment.

50. In October 2019, at an event hosted by Mrs. Ansari in Los Angles, Mr. Ansari and Mr. Dessi promised that they would repay the loan by November 2019.

51. Mr. Dessi claimed that he had a liquidity problem while at the event. However, within a few hours, it was announced that Mr. Dessi gave Mrs. Ansari's new organization, XPRIZE, a Five Hundred Thousand Dollar ($500,000.00) donation Mr. Dessi appeared on stage with prominent socialites and celebrates announcing the donation.

52. In December of 2019, Plaintiff notified Mr. Dessi and Mr. Ansari that he was in the process of launching an investment vehicle for his disabled children and required, at least, the Principal as capital for the fund before January 1, 2020. (*See* Ex. E).

53. Plaintiff notified Mr. Dessi and Mr. Ansari that he needed the money urgently, and that his failure to provide the promised capital would negatively impact his planned investments, and his ability to provide for his disabled children. (*See* Ex. E).

54. Defendants failed to repay the loan by January 1, 2020, causing significant financial harm to the Plaintiff.

55. In January 2020, Mr. Ansari and Mr. Dessi appointed Amir Ansari, Hamid Ansari's brother, as Managing Member of Prodea-Nashville in Luxembourg.

56. As a result, Amir Ansari holds positions on the Board of XPRIZE as well as is the Chief Technology Officer of Prodea-Nashville and now controls all cash balances in Prodea-Nashville as the Managing Member.

57. Further, this appointment allows Mr. Ansari, his wife and his and brother (collectively the "Ansaris") to fully control all management of the patent portfolio and secure all cash resident in Luxembourg at the Prodea-Nashville accounts of BNP Paribas where Mr. Chaudhri's funds were wired.

58. According to Mr. Ansari, this was done to avoid his maintaining an official role with the companies, and in an effort to shield the family's assets from potential claims.

59. On or about March 18, 2020, Mr. Ansari notified Plaintiff that the short-term Loan would be repaid "next week" and Plaintiff provided Mr. Dessi with wiring instructions for the Principal and Interest. (*See* Ex. E).

60. After, Mr. Dessi confirmed the wiring instructions. Plaintiff notified Defendants that he was making financial investments "due next week" on anticipation that the Defendants will repay the Loan. (*See* Ex. E).

61. Defendants failed to repay the Loan as promised and Plaintiff lost significant investment opportunities in a down market due to the recent COVID virus.

62. After multiple pleas from Plaintiff for repayment of the Loan and/or communications with a road map for repayment, on or about April 13, 2020, Mr. Ansari responded, thanking Plaintiff for his "understanding and extreme patience" and wrote, "[r]est assured your money [$2MM] will be returned along with promised upside [$500K].... All the delays around this transaction has been unexpected with the latest one being COVID19..." (*See* Ex. E).

63. Plaintiff reminded Defendants that the promised upside was for one month, that Defendants held his capital for over a year, and sought compensation for Defendants' failure to repay the Loan as promised.

64. To date, Defendants have failed to make any payments towards the Loan and still maintain control of over Two Million and Five Hundred Thousand Dollars ($2,500,000.00) of Plaintiff's money.

## Plaintiff's Harm

65. Upon information and belief, Defendants have made substantial monetary gains both from utilizing Plaintiff's money for investment opportunities, for their companies, and from gains on personal investments, and through Method, that they did not have to liquidate for the investment opportunities.

66. Defendants fraudulently induced Plaintiff into providing them with very substantial capital by offering personal guarantees and guarantees made by companies that they own and control and Plaintiff has been harmed as a direct and proximate result.

67. Defendants' actions were purposefully directed at lulling Plaintiff into inaction, with repeated false promises of repayment and gains on his money thus depriving Plaintiff of a once in a lifetime trading opportunity.

68. Defendants repeatedly made these statements knowingly and intentionally for the purpose of defrauding Plaintiff.

69. Plaintiff reasonably relied on Defendants statements, misstatements, omissions and continued promises.

70. As a result, Plaintiff has been severely harmed.

71. Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless

disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

## COUNT I
## (FRAUD)
## PLAINTIFF v. ALL DEFENDANTS

72. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

73. As set forth above, Defendant Mr. Ansari represented to Plaintiff that he would provide Plaintiff with some of his shares in Prodea-Nashville at a discount according to the Option Terms, in exchange for the Option Capital of Two Hundred Thousand Dollars ($200,000.00).

74. Mr. Ansari represented that Plaintiff would receive documentation confirming the Option Terms shortly after Plaintiff tendered the Option Capital.

75. Plaintiff justifiably relied on Defendant's representations, which were false, and which fraudulently induced Plaintiff advance and/or deposit monies with Defendant.

76. Thereafter, Mr. Dessi repeated Mr. Ansari's promise and stated that once he and Mr. Ansari controlled Prodea-Nashville, transferring the options would not be an issue.

77. Thereafter, Defendants Mr. Dessi and Mr. Ansari sought a loan from Plaintiff and represented to him that they would repay and /or guarantee Plaintiff's Two Million Dollars ($2,000,000.00), plus Five Hundred Thousand Dollars ($500,000.00) within six (6) weeks.

78. Further, Defendant GIL represented to Plaintiff that it would guarantee the Two Million Dollar ($2,000,000.00) Principal of the Loan.

79. Further, Defendants Mr. Dessi and Mr. Ansari both personally guaranteed the Five Hundred Thousand Dollar ($500,000.00) Interest of the Loan.

80. Plaintiff justifiably relied on Defendants' representations, which were false, and which fraudulently induced Plaintiff advance and/or deposit monies with Defendants.

81. At all times material, Defendants knew that such representations were false and fraudulent, and that Defendants had no intention of returning any monies they received from Plaintiff within the promised time.

82. Further Defendants repeatedly lulled Plaintiff into inaction by promising that he would soon receive what he was owed.

83. To date, Defendants have refused to provide Plaintiff with the promised options in Prodea-Nashville with no justification.

84. To date, Defendants have refused to return over Two Million and Five Hundred Thousand Dollars ($2,500,000.00) to Plaintiff with no justification.

85. As a result, Plaintiff has been severely harmed.

86. Plaintiff harm also includes the difference between the valuation of his options at a price substantially lower than what Intel paid, and the current value of Prodea-Nashville.

87. Plaintiff harm also includes the interest and/or potential upside on the Two Million and Five Hundred Thousand Dollars ($2,500,000.00) for the months that Defendants failed to repay the Loan.

88. Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against all Defendants jointly and severally, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, punitive damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees.

## COUNT II
## (CONVERSION)
### PLAINTIFF v. DEFENDANTS GIUSEPPE DESSI AND HAMID ANSARI

89. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

90. Defendants, Mr. Ansari and Mr. Dessi are currently unlawfully possessing and/or exercising control over monies that solely belong to Plaintiff.

91. Those monies are in excess of Two Hundred Thousand Dollars ($200,000.00) for the Options.

92. Those monies are in excess of Two Million and Five Hundred Thousand Dollars ($2,500,000.00) for the Loan.

93. Defendants have been notified that their possession and/or exercise of control over monies belonging to Plaintiff is unlawful, without Plaintiff's consent, and without lawful justification.

94. As a result of Defendants' conversion of Plaintiff's monies, Plaintiff has been damaged.

95. Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendants Giuseppe Dessi and Hamid Ansari jointly and severally, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, punitive damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees.

## COUNT III
## (BREACH OF CONTRACT)
## PLAINTIFF v. DEFENDANT GIUSEPPE DESSI

96. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

97. Plaintiff and Defendant Mr. Dessi entered into a verbal agreement as set forth more fully above.

98. In consideration for a bridge loan of Two Million Dollars ($2,000,000.00), Defendant Mr. Dessi agreed to repay the Two Million Dollars ($2,000,000.00) plus Five Hundred Thousand Dollars ($500,000.00)—for a total of Two Million Five Hundred Thousand Dollars ($2,500,000.00) within six (6) weeks.

99. Mr. Dessi breached the agreement by failing to repay the bridge loan within the agreed upon time period.

100. Further, Mr. Dessi has failed to make any payment on the bridge loan for more than one year, and to date, Plaintiff has not been repaid.

101. As a result of this breach, Plaintiff has been harmed.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Giuseppe Dessi, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

## COUNT IV
### (BREACH OF GUARANTEE / DECLARATORY JUDGEMENT)
### PLAINTIFF v. DEFENDANT GORDON INVESTMENTS LIMITED

102. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

103. Defendant GIL guaranteed the payment of Two Million Dollars ($2,000,000.00) to Plaintiff. (*See* Ex. A).

104. Plaintiff has not received the Two Million Dollars ($2,000,000.00) payment from any of the Defendants.

105. Defendant GIL is in breach of its guarantee.

106. Plaintiff seeks that this Court declare that the GIL guarantee is enforceable and compel GIL to liquidate assets in a sufficient amount to repay Plaintiff Two Million Dollars ($2,000,000.00).

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Gordon Investments Limited as set forth more fully above.

## COUNT V
### (BREACH OF GUARANTEE / DECLARATORY JUDGEMENT)
### PLAINTIFF v. DEFENDANT GIUSEPPE DESSI

107. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

108. Defendant Mr. Dessi guaranteed the payment of Five Hundred Thousand Dollars ($500,000.00) to Plaintiff. (*See* Ex. B).

109. Plaintiff has not received the Five Hundred Thousand Dollars ($500,000.00) payment from any of the Defendants.

110. Defendant Mr. Dessi is in breach of his guarantee.

111. Plaintiff seeks that this Court declare that Mr. Dessi's guarantee is enforceable and compel Mr. Dessi to liquidate assets in a sufficient amount to repay Plaintiff Five Hundred Thousand Dollars ($500,000.00).

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Giuseppe Dessi as set forth more fully above.

## COUNT VI
### (BREACH OF GUARANTEE / DECLARATORY JUDGEMENT)
### PLAINTIFF v. DEFENDANT HAMID ANSARI

112. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

113. Defendant Mr. Ansari guaranteed the payment of Five Hundred Thousand Dollars ($500,000.00) to Plaintiff. (*See* Ex. C).

114. Plaintiff has not received the Five Hundred Thousand Dollars ($500,000.00) payment from any of the Defendants.

115. Defendant Mr. Ansari is in breach of his guarantee.

116. Plaintiff seeks that this Court declare that Mr. Ansari's guarantee is enforceable and compel Mr. Ansari to liquidate assets in a sufficient amount to repay Plaintiff Five Hundred Thousand Dollars ($500,000.00).

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Hamid Ansari as set forth more fully above.

## COUNT VII
## (BREACH OF CONTRACT)
## PLAINTIFF v. DEFENDANT HAMID ANSARI

117. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

118. Plaintiff and Defendant Mr. Ansari entered into a verbal agreement as set forth more fully above.

119. In consideration for a capital investment of Two Hundred Thousand Dollars ($200,000.00), Defendant Mr. Ansari agreed to allow Plaintiff to purchase his shares in Prodea-Nashville at a discounted valuation and as described more fully above.

120. Mr. Ansari breached the agreement by failing to provide Plaintiff with the promised shares or ability to purchase those shares.

121. As a result of this breach, Plaintiff has been harmed.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Hamid Ansari, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

## COUNT VIII
## (UNJUST ENRICHMENT – IN THE ALTERNATIVE)
## PLAINTIFF v. ALL DEFENDANTS

122. Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

123. Plaintiff conferred upon Defendants the benefits of Two Million Dollars ($2,000,000.00).

124. Further, Plaintiff conferred upon Defendants the benefits of Five Hundred Thousand Dollars ($500,000.00) that was due to him but not paid.

125. Plaintiff also conferred upon Defendants a separate Two Hundred Thousand Dollars ($200,000.00) in exchange for discounted shares in Defendants' company.

126. At all times material hereto, in conferring these benefits on Defendants, Plaintiff acted in reliance on the promise that he would be compensated as set forth more fully above.

127. Defendants received such benefits.

128. Defendants sought to unlawfully, and without paying fair market value, retain these benefits for themselves.

129. Further, Defendants retained these benefits for more than a year longer than expected.

130. Defendants' retention of these benefits, without payment to Plaintiff, is inequitable.

131. Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

132. Moreover, upon information and belief, Defendants have made substantial monetary gains both from utilizing Plaintiff's money for investment opportunities and from gains on personal investments that they did not have to liquidate for the investment opportunities.

133. Accordingly, Plaintiff demands that Defendants account for the monies that they earned as a direct and/or indirect result of retaining Plaintiff's monies and disgorge any and all such profits to the Plaintiff.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendants Giuseppe Dessi and Hamid Ansari jointly and severally, and requests that the Court enter an order:

a) Compelling Defendants to account for all profits earned on monies received from Plaintiff and/or monies that they were not forced to liquidate and disgorging any such profits to the Plaintiff;
b) Awarding Plaintiff actual damages, compensatory damages, punitive damages, and/or consequential damages, in an amount to be determined at trial;
c) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
d) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees.

Respectfully Submitted,

**BOCHETTO & LENTZ, P.C.**

Date: May 7, 2020

By: ___/s/ Gavin P. Lentz_____

By:   Gavin P. Lentz, Esquire

*Attorney for Plaintiff*
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
(215) 735-2455 fax
glentz@bochettoandlentz.com