## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

**REHAN CHAUDHRI**          :
324 Croton Lake Road        :
Bedford Corners, NY 10549   :     CIVIL ACTION NO. 7:20-cv-03562
                            :
         *Plaintiff*        :
                            :
     v.                     :
                            :
**GORDON INVESTMENTS LIMITED** :
31, Evvipidou Street        :
NBA SEA PARK 1st Floor, Office 102 :
3031 Limassol Cyprus        :
                            :
         *and*              :
                            :
**GIUSEPPE DESSI**          :
132 Westbourne Grove        :
London, UK W11 2RR          :
                            :
         *and*              :
                            :
**HAMID ANSARI**            :
5809 Golden Leaf Court      :
Plano, Texas 75093-0000     :
                            :
         *Defendants*       :
_____:

## PLAINTIFF'S AMENDED COMPLAINT

**AND NOW** Comes Plaintiff, Rehan Chaudhri ("Mr. Chaudhri" or "Plaintiff") by and through his undersigned counsel, Bochetto & Lentz, P.C. ("B&L") and avers as follows in support of his Complaint against Defendants, Gordon Investments Limited ("GIL"), Giuseppe Dessi ("Mr. Dessi"), and Hamid Ansari ("Mr. Ansari") (collectively "Defendants"):

## I.     SUMMARY

1.     This is a fraudulent inducement and breach of contract action to recover principal and interest on a loan made to Defendants, Gordon Investments Limited ("GIL"), Giuseppe Dessi

("Mr. Dessi"), and Hamid Ansari ("Mr. Ansari") (collectively "Defendants").

2.      Defendants fraudulently induced Plaintiff Rehan Chaudhri ("Mr. Chaudhri" or "Plaintiff") to advance a Two Million Dollar ($2,000,000.00) short-term loan by falsely representing that they would promptly repay Mr. Chaudhri's Two Million, plus an additional Five Hundred Thousand Dollars ($500,000.00), for a total of Two Million and Five Hundred Thousand Dollars ($2,500,000.00) within two months (the "Loan") through a financial vehicle, Nashville S.a.r.l. in Luxembourg ("Nashville") which, upon information and belief, is controlled by Method Investment and Advisory ("Method"), which is controlled by GIL, which is controlled by Mr. Dessi and personally guaranteed by Mr. Ansari.

3.      In order to induce Plaintiff to make the Loan, the individual Defendants claimed that Nashville was being used to restructure the Intellectual Property ("IP") portfolio of Prodea Systems ("Prodea"), which was being operated by Mr. Ansari.

4.      Plaintiff had an existing investment in Prodea and was misled by the individual Defendants to into believing that the Loan would benefit the company and his investment.

5.      However, when Plaintiff sought repayment of the Loan, Defendants either avoided or ignored Plaintiff's communications, and have refused to make any payments towards the Loan.

6.      Despite Plaintiff's best efforts to obtain repayment of the Loan, the entire balance of Two Million and Five Hundred Thousand Dollars ($2,500,000.00) remains outstanding, for more than one year and the Defendants are now attempting to deny the terms of the loan despite evidence to the contrary.

7.      Plaintiff seeks to recover the capital he was fraudulently induced to provide the Defendants, the entire balance of the Loan plus interest, as well as punitive damages and

attorneys' fees arising from Defendants' knowingly false and fraudulent promises, as well as Defendants' continued fraudulent promises, which lulled Plaintiff into holding off filing suit until he discovered these misrepresentations.

## II.    PARTIES

8.      Plaintiff, Mr. Chaudhri is an adult individual residing at 324 Croton Lake Road, Bedford Corners, NY 10549.

9.      Defendant, GIL is a limited company with a registered business address at 31, Evvipidou Street, NBA SEA PARK 1st Floor, Office 102, 3031 Limassol Cyprus.  At all times material hereto, Mr. Dessi owned, controlled, and operated GIL.

10.     Defendant, Giuseppe Dessi ("Mr. Dessi") is an adult individual who may be served at his company, Method Investment and Advisory Group ("Method"), 40 New Bond Street, London UK W1S 2RX and his residence at 132 Westbourne Grove, London, UK W11 2RR. At all times material hereto, Mr. Dessi owned, controlled and operated Method through its holding company GIL.

11.     Method is headquartered in the United Kingdom, registered with the Financial Conduct Authority ("FCA") No. 4316130, and it is also owned, operated and controlled by Defendant Mr. Dessi.

12.     Defendant, Hamid Ansari ("Mr. Ansari") is an adult individual residing at 5809 Golden Leaf Court, Plano, Texas 75093.  Mr. Ansari is the CEO of Prodea.

13.     At all times material hereto, Mr. Dessi and Mr. Hamid travelled to New York City and conducted regular business dealings in the United States, and have assets in the United States. Defendants Mr. Dessi and Mr. Hamid both met with Plaintiff in New York City regarding the loan transaction at issue in this case.

14.     Defendants, Mr. Dessi and Mr. Hamid also own significant stakes in Prodea, a company initially based in Dallas, Texas.

15.     Further, upon information and belief, through Defendant GIL and/or any of GIL's subsidiaries, including but not limited to Method, Defendant Dessi does business with the United States, accept investments from United States citizens, and invest in assets, equities, and other financial products that are traded in the United States.

16.     Further, upon information and belief, Defendant GIL through its subsidiaries, also owns a significant stake in Prodea.

17.     Further, upon information and belief, Defendant GIL through its subsidiary Gordon Investments (Alaska) Inc. is registered in Alaska, and has a registered agent, Andrea N. Canfield, at 510 L. Street, Suite 500, Anchorage, AK 99501.

18.     Further, upon information and belief, Defendant GIL through its subsidiary Method Investments and Advisory, LLC is registered in New York, and has a registered agent, Michael Callahan at 750 3rd Avenue, 11th Floor, New York, NY 10017.

19.     Further, as set forth more fully below, Defendants Mr. Dessi and Mr. Hamid targeted Plaintiff in New York and defrauded Plaintiff who is a resident of the New York.

### III.     JURISDICTION AND VENUE

20.     This Court jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 exclusive of interest and costs and is between a citizen of the State of New York and citizens or subjects of a foreign states. Moreover, Defendants agreed that any dispute over this loan would be resolved ***and enforced*** under New York law and thus Defendants purposefully availed themselves to be sued under New York law by targeting a resident of New York.

21.     Specifically, both Mr. Ansari and Mr. Dessi travelled to New York to meet with Plaintiff and discuss the investments and loan that are at the heart of this dispute and both of them signed agreements consenting to enforcement of the loan agreements in New York.

22.     Further, Mr. Dessi and Mr. Ansari called Plaintiff in New York several times to make the misrepresentations discussed more fully herein. They further sent Plaintiff the loan documents at issue to Plaintiff at his New York address.

23.     Further, both Mr. Ansari and Mr. Dessi represented that documents pertaining to the loan would be forthcoming, and similar to the guarantees attached hereto and described more fully below, it was always understood that the formal loan documents would contain specific terms that would provide for dispute resolution in New York where Plaintiff resides.  However, as set forth more fully below, those representations were knowingly false, and after Plaintiff made the payments described herein, the documents Plaintiff was promised were never provided to him.

24.     Additionally, the guarantees described herein were understood by the parties to be enforceable by Plaintiff in his home state as he is domiciled in New York.

25.     Specifically, as to GIL, Mr. Dessi's guarantee provides for "enforcement" in New York, and Mr. Dessi represented that he had control over GIL and used GIL's status as the holding company of Method and Mr. Dessi's assets to perpetuate the fraud described herein.

26.     Additionally, GIL, through its subsidiaries Gordon Investments (Alaska), Ltd., and Method Investments and Advisory, LLC is registered in both Anchorage, Alaska and New York, NY.

27.     Importantly, all Defendants committed an intentional tort in New York, by expressly aiming their conduct, communications, and misrepresentations at New York through Plaintiff—a New York resident, and as a result New York bore the brunt of the harm and the was the focal point of the harm suffered by Plaintiff.

5

28.     Accordingly, this Court has specific jurisdiction over the Defendants for the purposes of this dispute.

29.     Additionally, and alternatively, this Court has jurisdiction over the Defendants as a result of their purposeful availing themselves to this forum, personally and through their wholly owned subsidiaries and/or those entities' agents.

30.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C § 1391 because Defendants agreed that any disputes "shall be construed and enforced under the laws of the State of New York" and a substantial part of the events giving rise to Plaintiff's claims occurred in this district.  (*See* Ex. D, Ex. E as identified below).

## IV.     FACTS COMMON TO ALL COUNTS

31.     Prior to the aforementioned events, Mr. Ansari stated to Plaintiff that he sold his previous company Telecom Technologies Inc. ("TTI") for $1.2 billion in 2001 to Sonus Networks, and that he had over $300 million of capital in his family office in Dallas.

32.     Mr. Dessi stated to Plaintiff that he had over $30 million of his personal capital in GIL.  Mr. Dessi also stated that he had an extensive career at Goldman Sachs, had majority control of an Italian bank, and also controlled Method through GIL, which had over $700 million of client investments and over $15 million of his personal capital.

33.     Based on these claims, Plaintiff understood Mr. Ansari and Mr. Dessi to be very wealthy, well capitalized, and reputable businessmen.

34.     In December of 2018 to January of 2019, Defendants Mr. Dessi and Mr. Ansari fraudulently induced Plaintiff into providing them with substantial capital for their investments, in the form of a loan backed by personal and company Guarantees.

35.     However, after receiving the Plaintiff's money, Mr. Dessi and Mr. Ansari failed to provide promised documents to support the loan and failed to deliver on their promise to repay the

loan they received from Plaintiff.  They both have since advised Plaintiff they don't intend to pay the loan back.

## **Facts Leading up to Loan**

36.     In or about June 2018, Defendant, Mr. Ansari approached Plaintiff and told him that Prodea was seeking to buy out a debt claim owned by Fortress Investment Group ("Fortress") against Prodea's Intellectual Property ("IP") and were reconstituting Prodea outside the USA.

37.     Mr. Chaudhri invested in Prodea based on the deal described by Mr. Ansari.

38.     When making his initial investment into Prodea in 2018, Mrs. Anousheh Ansari ("Mrs. Ansari"), Mr. Ansari's wife, was the CEO and the Plaintiff understood that all promises and stipulations made by Mr. Ansari were discussed with her as she was responsible for the management of Prodea.

39.     Mr. Ansari represented that he could not invest into the Prodea IP restructuring due to possible complications in his relationships with Intel, Mubadala and other institutional investors, as well as his participation in the negotiations with Fortress, which held claim to the Prodea IP patents.

40.     Mr. Ansari stated that his long-term friend, Mr. Ghassan Shaker, a wealthy Saudi billionaire based in London would provide a short-term loan of $500 million for Prodea allowing Mr. Ansari to restructure Prodea via a merger with a publicly listed company.

41.     Mr. Ansari provided a copy of the letter to Plaintiff as evidence of the deal and Mr. Shaker's involvement.  (*See* Letter from Mr. Ansari to Mr. Shaker attached hitherto as **Exhibit "A"**).

42.     According to Mr. Ansari's letter, the deal was "ultra-safe", in part because "other sources of permanent financing for the $500 million have already been identified and secured." (*See* Ex. A).

7

43.     Mr. Ansari stated that in order to obtain the loan from Mr. Shaker, Mr. Ansari required a third party to show Mr. Shaker deal points and that any document with the deal points would be "for discussion purposes only."  (*See* Term Sheet attached hereto as **Exhibit "B"**).

44.     Mr. Ansari, explicitly stated that the document would not be used to necessitate any monetary obligation on the Plaintiff and provided language in the document to that expressly stated that the Term Sheet was being provided "for discussion purposes only" and "[o]nly upon a successful execution of the Definitive Documents will all parties to such Definitive Documents be committed to make any payment and such other financial accommodations as set forth therein."

45.     Mr. Ansari presented this document to Mr. Chaudhri for signature so he could provide an example of the proposed loan conditions to Mr. Shaker.

46.     Subsequently, Mr. Ansari represented that Mr. Shaker agreed to provide Prodea, and related entities, the loan to restructure its IP patent portfolio.

**Loan to Mr. Dessi Guaranteed by Mr. Ansari**

47.     In or about December 2018 to January 2019, Defendants Mr. Dessi and Mr. Ansari approached Plaintiff and stated that the amount required for the Prodea IP portfolio negotiations with Fortress was not fully met by Mr. Shaker's and other investors' contributions, and as a result they required a short-term loan for up to six weeks in the amount of Two Million Dollars ($2,000,000.00).

48.     Mr. Ansari stated that he would fully guarantee Mr. Dessi's loan with all his family's personal assets for a prompt repayment within four to six weeks as he could not appear to have backed directly, due the above described conflict of interest.

49.     Mr. Dessi assured the Plaintiff that, within a maximum of six weeks, he would have access to over thirty million dollars ($30,000,000.00) in assets so that Plaintiff could be repaid the

Two Million Dollars ("$2,000,000.00) plus a Five Hundred Thousand Dollar ($500,000.00) premium for advancing the short-term loan.

50.     The Plaintiff made clear to Mr. Hamid and Mr. Ansari that he was lending them personal capital required to pay alimony and for the care of his adult disabled children and that prompt repayment within five to six weeks was imperative.

51.     Mr. Ansari stated that he had an aunt with a medical condition similar to Plaintiff's children and was empathetic to Plaintiff's financial responsibilities and children's health conditions, and that he would guarantee repaying the loan within six weeks.

52.     Mr. Dessi stated that he had also been through a divorce, understood the importance of paying alimony and child support, was empathetic the Plaintiff's children's' medical condition, and would repay the loan promptly within six weeks.

53.     Plaintiff reasonably relied on the Defendants' promises about their ability to repay and the time period within which they would repay him.

54.     Specifically, Plaintiff understood from representations made by Mr. Dessi that Mr. Dessi did in fact have in excess of thirty million dollars in assets, but simply lacked short term liquidity over this six-week period.

55.     Further, Plaintiff understood from representations made by Mr. Ansari that he would personally guarantee the debt, in the event that Mr. Dessi was unable to pay.

56.     Further still, Mr. Dessi and Mr. Ansari represented that other prominent investors, including Mr. Shaker, had already contributed substantial capital towards the deal.

57.     In reliance on the multiple misrepresentations described herein, Plaintiff agreed to provide the Two Million Dollars ($2,000,000.00) (the "Principal") short-term loan to Defendants' designee.

58.     Mr. Dessi and Mr. Ansari personally promised that Plaintiff would be repaid the Principal plus Five Hundred Thousand Dollars ($500,000.00) (the "Interest") within six (6) weeks (the "Term") (hereinafter, the Principal, Interest, and Term together are collectively referred to as the "Loan").

59.     Plaintiff, Mr. Dessi, and Mr. Ansari verbally agreed to the above referenced Loan terms, which were to be formalized soon after Plaintiff wired the money to their designee, due to what the Defendants described as a time constraint and immediate urgency with regards to dealing with Fortress.

60.     Mr. Dessi and Mr. Ansari repeatedly represented that they would provide formal loan documents shortly after Plaintiff wired them the money and Plaintiff relied on those representations and wired them the money.

61.     In the interim, to give the Plaintiff security the Defendants offered guarantees for the funds as described more fully below.

62.     As security for the Loan, Mr. Dessi offered to have his company Method guarantee the Principal and further represented that GIL, which was the holding company for Method and also controlled by Mr. Dessi, was backing up the promise to repay the Plaintiff's Two Million Dollar Principal so he did not have to worry.  Mr. Dessi also assured repayment by referencing his other substantial personal assets and he drafted a document confirming that GIL would guarantee the Principal. (*See* GIL Guarantee attached hereto as **Exhibit "C"**).

63.     As additional security for the Loan, Mr. Dessi offered a personal guarantee on the Interest. (*See* Mr. Dessi Personal Guarantee attached hereto as **Exhibit "D"**).

64.     Mr. Ansari, who stood to benefit from Mr. Dessi obtaining control of Prodea's IP through Nashville, was aware of and facilitated the verbal Loan agreement with the Plaintiff, and as further assurance to Plaintiff offered to back the full amount of the Loan as well as acting as a

"back-stop" and to guarantee Mr. Dessi's guarantee for the $500,000 Interest payment. (*See* Mr. Ansari Guarantee attached hereto as **Exhibit "E"**). (Exhibits C, D, and E are hereinafter collectively referred to as the "Guarantees").

65.     Notably, even though the loan documents were never provided to Plaintiff, they are referenced in Defendants' Guarantees, on which Plaintiff relied when he transferred the money to fund the Loan.

66.     Additionally, despite Plaintiff repeatedly requesting a guarantee from Method, Mr. Dessi repeatedly insisted that the guarantee be provided by GIL would be sufficient because GIL is a holding company for Method and both entities are owned and controlled by Mr. Dessi.

67.     Through these misrepresentations and by providing a guarantee from GIL, Mr. Dessi engaged in business dealings in the United States, specifically targeted New York, and involved GIL in the fraud and the fraudulent representations on which Plaintiff relied in making the Loan.

68.     Mr. Dessi and Mr. Ansari stated that the monies were required urgently to pay Fortress and that the documentation of the agreement, including the written contract, terms and conditions, patent claim charts, financial statements, inter party agreements, and a Letter of Credit ("LOC") from an established bank would be provided shortly after the monies were wired. (*See* a true and correct copy of the relevant portion of Mr. Dessi and Mr. Chaudhri's WhatsApp communications attached hereto as **Exhibit "F"**; *See also* a true and correct copy of the relevant portion of Mr. Dessi, Mr. Ansari, and Mr. Chaudhri's WhatsApp group chat communications attached hereto as **Exhibit "G"**).

69.     Thereafter, between January and February of 2019, in reliance on the promised terms of the Loan as well as the Guarantees made by the Defendants, Plaintiff wired funds to the Defendants and/or their assignees—as directed by the Defendants.

11

70. Further, in reliance on Defendants' promise to repay the loan within six (6) weeks, Plaintiff made arrangements to invest the Principal and Interest from the Loan into another venture.

71. However, Mr. Dessi failed to provide any of the above-referenced loan documents despite repeated requests for such.

72. Further, Defendants failed to repay the short-term Loan in accordance with the agreed upon Term.

73. Due to the Parties' ongoing business relationships, between April and December of 2019, Plaintiff informally asked the Mr. Dessi and Mr. Ansari about repayment of the Loan. (*See* Ex. F).

74. Defendants repeatedly promised to repay the Loan, but made no effort or payments towards the Principal or Interest of the Loan, and instead, used Plaintiff's money to their benefit and to Plaintiff's detriment.

**Plaintiff Discovered Defendants' Fraud and Obtained Corroborating Evidence but the Defendants Lulled Plaintiff into Inaction with Additional Misrepresentations**

75. In October 2019, at an event hosted by Mrs. Ansari in Los Angeles, Mr. Ansari and Mr. Dessi promised that they would repay the loan by November 2019.

76. Mr. Dessi claimed that he had a liquidity problem while at the event. However, within a few hours, it was announced that Mr. Dessi gave Mrs. Ansari's new organization, XPRIZE, a Five Hundred Thousand Dollar ($500,000.00) donation. Mr. Dessi appeared on stage with prominent socialites and celebrities announcing the donation, along with Mr. and Mrs. Ansari.

77. Shortly after the event, on October 6, 2019, Mr. Ansari forwarded Plaintiff a Shareholders Update purportedly dated September 25, 2019, stating that Prodea deal is expected to be consummated "in the next several weeks." (*See* Shareholders Update Email attached hereto as **Exhibit "H"**).

78.     Notably, Plaintiff is a shareholder in Prodea and should have received this email in September, but did not.

79.     Upon information and belief, Mr. Ansari either purposely omitted Plaintiff from this shareholder correspondence after Plaintiff began demanding the repayment of his loan or fabricated the email in furtherance of the fraud after Plaintiff raised additional concerns at the XPRIZE event.

80.     In December of 2019, Plaintiff notified Mr. Dessi and Mr. Ansari that he was in the process of launching an investment vehicle for his disabled children and required, at least, the Principal as capital for the fund before January 1, 2020. (*See* Ex. F).

81.     Plaintiff notified Mr. Dessi and Mr. Ansari that he needed the money urgently, and that his failure to provide the promised capital would negatively impact his planned investments, and his ability to provide for his disabled children. (*See* Ex. F).

82.     Defendants failed to repay the loan by January 1, 2020, causing significant financial harm to the Plaintiff.

83.     In January 2020, Mr. Ansari appointed his brother Mr. Amir Ansari, as Managing Member of Metis, an existing Ansari controlled company.  Metis would use Nashville's capital and Prodea's IP portfolio, to make an acquisition of publicly listed XPERI (ticker "XPER").  This was publicly filed with the SEC.  (*See* Securities and Exchange Commission "SEC" filing attached hereto as **Exhibit "I"**).

84.     The letter by Mr. Amir Ansari to the XPER board states that Method—a Dessi controlled entity—through its wholly owned subsidiary Nashville ***already*** has $1,500,000,000 in financing to make the acquisition of XPER for Metis. (*See* Ex. I).

85.     The filing includes a letter from Method to Metis—drafted by Mr. Dessi—stating that he had secured $1.5 billion in Nashville, to acquire XPER in the public markets for Mr. Amir Ansari and Mr. Tom Lacey, as Managing Members of Metis.  (*See* Ex. I).

86.     The letter states that "Nashville S.a.r.l., a Luxembourg société á responsabilité limitée, a wholly owned subsidiary of Method, is pleased to provide $1,500,000,000 USD in debt financing in connection with Metis's acquisition of 100% of the common stock of XPER." (*See* Ex. I).

87.     The announcement also expressly states that "[o]ur proposal is not subject to any financing contingency.  Metis has readily committed capital with which to consummate the acquisition and pay associated costs and expenses without any need for other financing sources." (*See* Ex. I).

88.     Mr. Amir Ansari holds positions on the Board of XPRIZE, Mrs. Anousheh Ansari's nonprofit organization, as well as is the Chief Technology Officer of Prodea, is the inventor of the Prodea IP portfolio, and is Managing Member of Metis.

89.     Further, this appointment allows Mr. Amir Ansari, his sister in law Mrs. Ansari, and his brother Mr. Ansari (collectively the "Ansaris") to control management of the Prodea IP portfolio, and to secure Nashville's financing as stated in the acquisition announcements filed with the SEC.

90.     According to Mr. Ansari, Metis was used to avoid his maintaining an official link between Prodea and the financing vehicle, and in an effort to shield the Ansari's assets from potential claims.

91.     At Mr. Dessi and Mr. Ansari's request, in January of 2020, Plaintiff began to arrange a Euro 1.2 billion loan for Nashville to support Metis in the acquisition.

92.     Based on Plaintiff's efforts and in reliance Mr. Ansari and Mr. Dessi's claims that the Prodea IP restructuring had been complete and representation that the IP now resided in Luxembourg with Nashville and valued over $2 billion, in March of 2020, Korea Investment & Securities Co., Ltd. ("KIS") extended a Euro 1.2 billion lending offer to Nashville. (*See* March 3, 2020 Letter from KIS attached hereto as **Exhibit "J"**).

93.     Mr. Ansari and Mr. Dessi rejected the lending offer because it had a 3% interest rate, despite the rate being attractive from a commercial standpoint, particularly during the stock and bond market collapse of March 2020.

94.     The rejection of the financing offer came after they had already made the announcements to the public markets claiming that they had the financing fully secured.

95.     In conversations with the Plaintiff, Mr. Ansari, Mr. Ansari's advisors, Mr. Dessi, and his wife and his brother, Mr. Ansari stated that he wanted no liability to pay the 3% interest rate on the Euro 1.2 billion XPER acquisition bridge loan and required a loan with no guaranteed interest payments.

96.     Mr. Dessi and Mr. Ansari's inability and refusal to pay attractive commercial term interest rates on the acquisition loan undermine and conflict with their public representations, that they had sufficient capital through Nashville, specifically $1.5 billion, for the XPER transaction.

97.     Thereafter, the XPER board publicly rejected the offer of Metis, Method, and Nashville to acquire it stating they were unsure of the finances to make the acquisition.

98.     To date Mr. Dessi, Mr. Amir Ansari, and Mr. Ansari have not shared the current bank balances, assets, and financial accounting statements of Nashville with the company's shareholders, XPER board and management team, or the Plaintiff.

99.     Additionally, upon information and belief, Mr. Ansari, Mr. Dessi and Mr. Amir Ansari refused to pay legal bills and other expenses, contradicting their public statements that they had sufficient capital to pay for the deal expenses.

100.     Specifically, upon information and belief, Prodea has not been paying its expenses as they come due, including employee pay and consultant fees for work rendered over 2018, 2019 and 2020 and as a result is currently vulnerable to claims and litigation and is potentially insolvent. (*See* sample of Glass Door reviews attached hereto as **Exhibit "K"** additional reviews can be accessed at https://www.glassdoor.com/Reviews/Prodea-Systems-Reviews-E270982.htm; *See also* litigation captioned Tyson King v. Prodea Systems, Inc., et al., Docket No. 1:19-cv-10016-NMG).

101.     Upon additional investigation by the Plaintiff, it was discovered that Prodea had substantial judgments against it, dating back to at least 2017, totaling in excess of $1.3 million. (*See* litigation captioned Fidor S.P.A. Fiduciaria Orefici v. Prodea Systems Inc., Docketed in Dallas County, Texas, 160th Judicial District – DC-15-00808).

102.     Further, upon additional investigation by the Plaintiff, it was discovered that Mr. Ansari had substantial litigation and liens against him dating back to at least 2013 totaling in excess of $200,000. (*See* litigation captioned Bita Daryabari v. Hamid Ansari, Docketed in Dallas County, Texas, 134th Judicial District – DC-15-06827).

103.     Accordingly, Mr. Ansari made knowing misrepresentations of fact regarding his net worth, Prodea's assets and liabilities, Prodea's ability to do the proposed IP deal, and his ability to guarantee and/or repay any portion of the Loan.

104.     To the extent that Mr. Ansari omitted the above detailed information, it was a knowing and intentional omission of material information that was omitted for the purpose of convincing Plaintiff to provide Mr. Hamid and Mr. Dessi with the loan described herein.

105.    Mr. Ansari knew or should have known that these facts, representations and omissions were material to Plaintiff providing the Loan, and knew that if he disclosed the existence of millions of dollars in lawsuits, liens, and judgments to the Plaintiff he would not have done business with the Defendants, made the Loan or relied on the Defendants' guarantees.

**Defendants Continued Fraudulent Representations to Lull Plaintiff into Inaction**

106.    After repeated requests, on or about March 18, 2020, Mr. Ansari notified Plaintiff that the short-term Loan would be repaid "next week" and Plaintiff provided Mr. Dessi with wiring instructions for the Principal and Interest. (*See* Ex. G).

107.    After, Mr. Dessi confirmed the wiring instructions.  Plaintiff notified Defendants that he was making financial investments "due next week" on anticipation that the Defendants will repay the Loan.  (*See* Ex. G).

108.    Defendants failed to repay the Loan as promised and Plaintiff lost significant investment opportunities in a down market due to the recent COVID virus.

109.    After multiple pleas from Plaintiff for repayment of the Loan and/or communications with a road map for repayment, on or about April 13, 2020, Mr. Ansari responded, thanking Plaintiff for his "understanding and extreme patience" and wrote, "[r]est assured your money [$2MM] will be returned along with promised upside [$500K]…. All the delays around this transaction has been unexpected with the latest one being COVID19…" (*See* Ex. G).

110.    Plaintiff reminded Defendants that the promised upside was for just over one month, that Defendants held his capital for over a year, and sought compensation for Defendants' failure to repay the Loan as promised.

111.    To date, Defendants have failed to make any payments towards the Loan and still maintain control of over Two Million and Five Hundred Thousand Dollars ($2,500,000.00) of Plaintiff's money.

**Mr. Dessi's Admissions and Plaintiff's Findings Regarding Defendants' Fraud**

112.     In discussions with Mr. Dessi, in or about June of 2020, in attempt to resolve the Parties' dispute, Mr. Dessi stated that the only cash raised in Nashville's bank accounts in 2019 was Plaintiff's Two Million Dollars.

113.     Mr. Dessi also stated that Mr. Shaker, although a long-term friend of Mr. Ansari's, did not actually invest in Nashville to restructure the Prodea IP portfolio as Plaintiff was led to believe prior to extending the Loan.

114.     Mr. Dessi claimed that an additional injection of $3 million was made into Nashville in January of this year by his group companies.

115.     However, that is well below the $1.5 billion in financing that he and Mr. Amir Ansari represented they had in their public announcement for the XPER acquisition.

116.     When the Plaintiff asked for the books and records of Nashville, Mr. Dessi refused to send them.

117.     Upon information and belief, Prodea has not been restructured and the IP portfolio has not been transferred to Nashville.

118.     Moreover, it appears that Mr. Ansari is now claiming that there is no formal relationship between Prodea and Nashville.

119.     Accordingly, any announcements by Mr. Amir Ansari, Mr, Dessi, Metis, Nashville, and Method claiming they have $1.5 billion in financing to acquire XPER through Nashville appear to not be backed by actual monies required to execute such a large public acquisition, and upon information were knowing misrepresentations of material fact.

120.     Further, upon information and belief, Prodea and the Ansaris have had financial problems for several years, which have been concealed in order to lull investors and debt holders into inaction, and Prodea's employees and contractors are currently not being paid.

121.    Given that: (i) the Prodea IP restructuring transaction has not transpired and doesn't appear likely to transpire; (ii) Pordea is not paying basic going concern expenses such as employee salaries; (iii) that Nashville has limited capabilities in raising capital to execute the restructuring for over two years; and (iv) that Defendants' Loan to Plaintiff is long overdue, the Plaintiff requests the Courts to enforce the personal and corporate guarantees made by Defendants as well as immediate and prompt repayment of the Loan.

**Plaintiff's Harm**

122.    Upon information and belief, Defendants have made substantial monetary gains both from utilizing Plaintiff's money for investment opportunities, for their companies, and from gains on personal investments, and through Method, that they did not have to liquidate for the investment opportunities.

123.    Defendants fraudulently induced Plaintiff into providing them with the Loan based on representations of their access to capital, other wealthy individuals' investments, and ability to repay the Loan quickly.

124.    Further, Defendants fraudulently induced Plaintiff into providing them with very substantial capital by offering personal guarantees and guarantees made by companies that they own and control.

125.    Defendants' actions were purposefully directed at obtaining Two Million Dollars from Plaintiff and then lulling Plaintiff into inaction, with repeated false promises of repayment and gains on his money.

126.    Defendants repeatedly made these statements knowingly and intentionally for the purpose of defrauding Plaintiff.

127.    Plaintiff reasonably relied on Defendants statements, misstatements, omissions and continued promises.

19

128.   As a result, Plaintiff has been severely harmed and deprived of a once in a lifetime trading opportunity.

129.   Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

## COUNT I
### (FRAUD)
### PLAINTIFF v. ALL DEFENDANTS

130.   Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

131.   As set forth above, Defendants Mr. Dessi and Mr. Ansari sought a loan from Plaintiff and made material representations of fact pertaining to their access to capital, the value of the investment, and their ability to repay and/or guarantee a repayment Plaintiff's Two Million Dollars ($2,000,000.00), plus Five Hundred Thousand Dollars ($500,000.00) within six (6) weeks.

132.   Further, Defendant GIL, via Mr. Dessi who owns and controls GIL, represented to Plaintiff that it would guarantee the Two Million Dollar ($2,000,000.00) Principal of the Loan.

133.   Further, Defendants Mr. Dessi and Mr. Ansari both personally guaranteed the Five Hundred Thousand Dollar ($500,000.00) Interest of the Loan.

134.   Plaintiff justifiably relied on Defendants' representations, which were false, and which fraudulently induced Plaintiff to loan money to the Defendants.

135.   At all times material, Defendants knew that such representations were false and fraudulent, that the investments they claimed to already have were not real, and that Defendants had no intention of returning any monies they received from Plaintiff within the promised time.

136.     Further Defendants repeatedly lulled Plaintiff into inaction by promising that he would soon receive what he was owed.

137.     To date, Defendants have refused to return over Two Million and Five Hundred Thousand Dollars ($2,500,000.00) to Plaintiff with no justification.

138.     As a result, Plaintiff has been severely harmed.

139.     Plaintiff harm also includes the interest and/or potential upside on the Two Million and Five Hundred Thousand Dollars ($2,500,000.00) for the months that Defendants failed to repay the Loan.

140.     Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against all Defendants jointly and severally, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, punitive damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees.

**COUNT II**
**(CONVERSION)**
**PLAINTIFF v. DEFENDANTS GIUSEPPE DESSI AND HAMID ANSARI**

141.     Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

142.    Defendants, Mr. Ansari and Mr. Dessi are currently unlawfully possessing and/or exercising control over monies that solely belong to Plaintiff.

143.    Those monies are in excess of Two Million and Five Hundred Thousand Dollars ($2,500,000.00) for the Loan.

144.    Defendants have been notified that their possession and/or exercise of control over monies belonging to Plaintiff is unlawful, without Plaintiff's consent, and without lawful justification.

145.    As a result of Defendants' conversion of Plaintiff's monies, Plaintiff has been damaged.

146.    Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendants Giuseppe Dessi and Hamid Ansari jointly and severally, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, punitive damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees.

## COUNT III
## (BREACH OF CONTRACT)
## PLAINTIFF v. DEFENDANT GIUSEPPE DESSI

147.    Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

148.    Plaintiff and Defendant Mr. Dessi entered into a verbal agreement as set forth more fully above.

149.    In consideration for a bridge loan of Two Million Dollars ($2,000,000.00), Defendant Mr. Dessi agreed to repay the Two Million Dollars ($2,000,000.00) plus Five Hundred Thousand Dollars ($500,000.00)—for a total of Two Million Five Hundred Thousand Dollars ($2,500,000.00) within six (6) weeks.

150.    Mr. Dessi breached the agreement by failing to repay the bridge loan within the agreed upon time period.

151.    Further, Mr. Dessi has failed to make any payment on the bridge loan for more than one year, and to date, Plaintiff has not been repaid.

152.    As a result of this breach, Plaintiff has been harmed.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Giuseppe Dessi, and requests that the Court enter an order:

a) Awarding Plaintiff actual damages, compensatory damages, and/or consequential damages, in an amount to be determined at trial;
b) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
c) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper.

## COUNT IV
### (BREACH OF GUARANTEE / DECLARATORY JUDGEMENT)
### <u>PLAINTIFF v. DEFENDANT GORDON INVESTMENTS LIMITED</u>

153.    Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

154.    Defendant GIL guaranteed the payment of Two Million Dollars ($2,000,000.00) to Plaintiff. (*See* Ex. C).

155.    Plaintiff has not received the Two Million Dollars ($2,000,000.00) payment from any of the Defendants.

156.    Defendant GIL is in breach of its guarantee.

157.    Plaintiff seeks that this Court declare that the GIL guarantee is enforceable and compel GIL to liquidate assets in a sufficient amount to repay Plaintiff Two Million Dollars ($2,000,000.00).

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Gordon Investments Limited as set forth more fully above in the amount of $2 million dollars plus pre and post judgement interest, and such other relief as the Court deems just.

## COUNT V
### (BREACH OF GUARANTEE / DECLARATORY JUDGEMENT)
### <u>PLAINTIFF v. DEFENDANT GIUSEPPE DESSI</u>

158.    Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

159.    Defendant Mr. Dessi guaranteed the payment of Five Hundred Thousand Dollars ($500,000.00) to Plaintiff. (*See* Ex. D).

160.    Plaintiff has not received the Five Hundred Thousand Dollars ($500,000.00) payment from any of the Defendants.

161.    Defendant Mr. Dessi is in breach of his guarantee.

162.    Plaintiff seeks that this Court declare that Mr. Dessi's guarantee is enforceable and compel Mr. Dessi to liquidate assets in a sufficient amount to repay Plaintiff Five Hundred Thousand Dollars ($500,000.00).

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Giuseppe Dessi in the amount of $500,000 dollars plus pre and post judgement interest, and such other relief as the Court deems just.

### COUNT VI
### (BREACH OF GUARANTEE / DECLARATORY JUDGEMENT)
### PLAINTIFF v. DEFENDANT HAMID ANSARI

163.    Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

164.    Defendant Mr. Ansari guaranteed the payment of Five Hundred Thousand Dollars ($500,000.00) in the event that Mr. Dessi was unable to pay. (*See* Ex. E).

165.    Plaintiff has not received the Five Hundred Thousand Dollars ($500,000.00) payment from any of the Defendants.

166.    Accordingly, Defendant Mr. Ansari is in breach of his guarantee.

167.    Upon information and belief, Mr. Dessi has not sought that Mr. Ansari make payment on the guarantee.

168.    Accordingly, Plaintiff seeks that this Court declare that Mr. Ansari's guarantee is enforceable, that Plaintiff has standing to demand immediate payment on the guarantee, and that the Court compel Mr. Ansari to liquidate assets in a sufficient amount to repay Plaintiff Five Hundred Thousand Dollars ($500,000.00).

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendant Hamid Ansari in the amount of $500,000 dollars plus pre and post judgement interest, and such other relief as the Court deems just.

## COUNT VII
## (UNJUST ENRICHMENT – IN THE ALTERNATIVE)
## PLAINTIFF v. DEFENDANTS HAMID ANSARI AND GIUSEPPE DESSI

169.    Plaintiff hereby incorporates by reference all prior paragraphs as though set forth fully at length herein.

170.    Plaintiff conferred upon Defendants, Mr. Ansari and Mr. Dessi the benefits of Two Million Dollars ($2,000,000.00).

171.    Further, Plaintiff conferred upon Defendants, Mr. Ansari and Mr. Dessi the benefits of Five Hundred Thousand Dollars ($500,000.00) that was due to him but not paid.

172.    At all times material hereto, in conferring these benefits on Mr. Ansari and Mr. Dessi, Plaintiff acted in reliance on the promise that he would be compensated as set forth more fully above.

173.    Defendants, Mr. Ansari and Mr. Dessi received such benefits.

174.    Defendants, Mr. Ansari and Mr. Dessi sought to unlawfully, and without paying fair market value, retain these benefits for themselves.

175.    Further, Defendants, Mr. Ansari and Mr. Dessi retained these benefits for more than a year longer than expected.

176.    Defendants' retention of these benefits, without payment to Plaintiff, is inequitable.

177.    Defendants' actions were outrageous in that they were committed wrongfully, knowingly, oppressively, intentionally, with an evil motive, actual malice, wanton and reckless

disregard for the law, gross negligence and/or reckless indifference to the rights of Plaintiff over an extended period of time.

178.    Moreover, upon information and belief, Defendants have made substantial monetary gains both from utilizing Plaintiff's money for investment opportunities and from gains on personal investments that they did not have to liquidate for the investment opportunities.

179.    Accordingly, Plaintiff demands that Defendants account for the monies that they earned as a direct and/or indirect result of retaining Plaintiff's monies and disgorge any and all such profits to the Plaintiff.

**WHEREFORE,** Plaintiff Rehan Chaudhri demands judgment in his favor and against Defendants Giuseppe Dessi and Hamid Ansari jointly and severally, and requests that the Court enter an order:

a) Compelling Defendants to account for all profits earned on monies received from Plaintiff and/or monies that they were not forced to liquidate and disgorging any such profits to the Plaintiff;
b) Awarding Plaintiff actual damages, compensatory damages, punitive damages, and/or consequential damages, in an amount to be determined at trial;
c) Awarding Plaintiff pre- and post-judgment interest in an amount to be determined at trial; and
d) Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper, including the award of costs, expenses, and reasonable attorneys' fees.

Respectfully Submitted,

**BOCHETTO & LENTZ, P.C.**

Date: July 9, 2020

By: ____/s/ Gavin P. Lentz_____
            Gavin P. Lentz, Esquire
            *Attorney for Plaintiff*
            1524 Locust Street
            Philadelphia, PA 19102
            (215) 735-3900
            (215) 735-2455 fax
            glentz@bochettoandlentz.com